UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x

SAMANTHA LIZARRA, an infant over     :
the age of 14 years, by her Father and
Natural Guardian, CANDIDO LIZARRA,   :
and CANDIDO LIZARRA, Individually,

                                     :

                    Plaintiffs,      :

          -against-

                                     :

MIGDALIA FIGUEROA and
LISA C. FIGUEROA,                    :

                    Defendants.      :

--------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/21/14
```

**ORDER REGARDING
CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

12 Civ. 3119 (FM)

**FRANK MAAS,** United States Magistrate Judge.

This case is before me for all purposes following the parties' consent
pursuant to 28 U.S.C. § 636(c).  (ECF No. 8).  Presently pending before the Court are two
cross-motions for summary judgment.  For the reasons set forth below, the plaintiffs'
motion for partial summary judgment as to liability (ECF No. 30) is denied, and the
defendants' motion for summary judgment (ECF No. 11) is granted in part and denied in
part.

I.     Factual Background

The following facts are either undisputed or set forth in the light most
favorable to plaintiff Samantha Lizarra ("Lizarra").

On November 10, 2011, Lizarra, then seventeen years old, was crossing an
intersection in Queens, New York, at a crosswalk.  A car driven by defendant Lisa
Figueroa and owned by defendant Migdalia Figueroa struck Lizarra's left side, after
which she fell on her right elbow.  After the accident ("November 10 Accident"), Lizarra
was unable to walk; she was transported to New York Hospital in Queens, where she
eventually complained of pain in her left knee, hip, and lower back.  Lizarra was
hospitalized until November 14, 2011.  When she was discharged, she was instructed to
use a walker.  Lizarra spent two weeks in bed at home, after which she was confined to
her home for an additional ten months, except for visits to the hospital and her doctors.

On June 24, 2011, less than five months before the November 10 Accident, Lizarra was a passenger in a vehicle that was rear-ended. On that occasion ("June 24 Accident"), Lizarra complained of, among other things, an injury to her left knee. Lizarra was treated by an orthopedic surgeon, Dr. Jeffrey Cohen, after both accidents. After more conservative treatment failed to alleviate Lizarra's pain, Dr. Cohen performed arthroscopic surgery on her left knee in February 2012. Dr. Cohen further recommended that Lizarra have surgery to repair her right shoulder, but that surgery had not occurred by the date the cross-motions were filed because Lizarra was pregnant at the time. She delivered that baby in or around November 2012.

II.     Relevant Law

     A.     Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact" based on supporting materials in the record. Fed. R. Civ. P. 56. "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party therefore cannot defeat a motion for summary judgment simply by relying upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court must "view the evidence in the light most favorable to the party opposing summary judgment and must draw all permissible inferences" in favor of that party. Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 78 (2d Cir. 2002) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)); Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). The Court also must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. See Sousa v. Roque, 578 F.3d 164, 166 n.1 (2d Cir. 2009). Assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the Court. Fischl, 128 F.3d at 55; see also Fed. R. Civ. P. 56(e) 1963 advisory committee's note. Thus, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." Fischl, 128 F.3d at 55.

B.    Duty of Care

Section 1146 of the New York Vehicle and Traffic Law requires that "every driver of a vehicle . . . exercise due care to avoid colliding with any bicyclist, pedestrian, or domestic animal upon any roadway and shall give warning by sounding the horn when necessary."  Section 4-04(b)(2) of Title 34 of the Rules and Regulations of the City of New York provides that "no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the operator to yield."  In addition, Section 4-05(a) of Title 34 provides that, "[w]henever a traffic control device regulates any turn or other movement at an intersection or other location, no operator of any vehicle shall disregard the direction of such device, unless directed to do so by a law enforcement officer."  Section 4-04(d) further provides that, "[n]otwithstanding other provisions of these rules, the operator of a vehicle shall exercise due care to avoid colliding with any pedestrian."

C.    New York No Fault Law

New York's No Fault Law, N.Y. Ins. Law § 5101, et seq., is intended to "significantly reduce the number of automobile personal injury accident cases litigated in the courts." Lopez v. Senatore, 65 N.Y.2d 1017, 1020 (1985) (quoting Licari v. Elliott, 57 N.Y.2d 230, 236 (1982)).  As a consequence of its enactment, a person who suffers only "minor" injuries from a car accident may no longer sue to recover damages for pain and suffering.  Hodder v. United States, 328 F. Supp. 2d 335, 348 (E.D.N.Y. 2004).  Thus, in order to recover such damages, plaintiffs must establish that they have suffered a "serious injury."  N.Y. Ins. Law § 5104(a); Molina v. United States, 301 F. Supp. 2d 317, 320 (S.D.N.Y. 2004).

Section 5102(d) of the Insurance Law defines a serious injury as:

a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

3

N.Y. Ins. Law § 5102(d).  "If it can be said, as a matter of law, that [a] plaintiff suffered no serious injury . . . , then [the] plaintiff has no claim to assert and there is nothing for the jury to decide."  Licari, 57 N.Y.2d at 238.

In this case, Lizarra contends that her injuries qualify as "serious" because they gave rise to a "significant limitation" regarding her left knee and right shoulder, a "permanent injury to her right shoulder, and an injury or impairment restricting her usual and customary activities for ninety of the 180 days immediately following the November 10 Accident.  (See ECF No. 38 ("Pls.' Opp. Mem.") at 19-23).  The defendants dispute whether Lizarra sustained any "serious injury" as a result of the November 10 Accident. (ECF No. 13 ("Defs.' Mem.") at 4-6).

In connection with their motion, the defendants bear the initial burden of establishing a prima facie case that Lizarra did not suffer a serious injury within the meaning of Section 5102(d).  Byrne v. Oester Trucking, Inc., 386 F. Supp. 2d 386, 392 (S.D.N.Y. 2005); Gaddy v. Eyler, 79 N.Y.2d 955, 956-57 (1992).  Once the defendants make out a prima facie case, the burden shifts to the plaintiffs to come forward with sufficient evidence demonstrating that Lizarra sustained a serious injury.  Ebewo v. Martinez, 309 F. Supp. 2d 600, 604 (S.D.N.Y. 2004) (quoting Gaddy, 79 N.Y.2d at 957).  Both sides must meet their burden through competent evidence, which may include the affidavits or declarations of physicians.  Rogers v. McLamb, No. 04 Civ. 7043 (HBP), 2006 WL 2734228, at *3 (S.D.N.Y. 2006); Byrne, 386 F. Supp. 2d at 392 (citing John v. Engel, 768 N.Y.S.2d 527 (3d Dep't 2003)); Ebewo, 309 F. Supp. 2d at 604.

III.  Application of Law to Facts

A.  Liability

The defendants first contend that Lizarra's deposition testimony may not be considered in connection with her motion for partial summary judgment because (i) the transcript is unsworn and (ii) Rule 32 of the Federal Rules of Civil Procedure permits only an adverse party to use the deposition transcript of an available witness.  (ECF No. 35 at 1).

The defendants are correct that Lizarra did not review and sign the deposition transcript after it was prepared, but the transcript plainly indicates that she testified after "having been first duly sworn by a Notary Public of the State of New York."  (Pls.' Opp. Mem., Ex. 1 at 4, 63).  Moreover, the court reporter at the deposition certified that she took that testimony after Lizarra was "duly sworn."  (Id. at 65).  The parties also stipulated that "an unsigned copy of the deposition may be used with the same force and effect as if signed by the witness [thirty] days after service of the

4

original."  (Id. at 3).  Lizarra's failure to review the transcript of her testimony in order to make any necessary changes means only that she is bound by her testimony as transcribed.  See Fed. R. Civ. P. 30(e); Pacheco v. N.Y. Presbyterian Hosp., 593 F. Supp. 2d 599, 605 n.1 (S.D.N.Y. 2009).  Since her testimony was sworn, the Court may consider it in resolving Lizarra's motion.  See Fed. R. Civ. P. 56(c)(1)(A) (party must support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions"); Thomas v. S.E.A.L. Sec., Inc., 301 F. App'x 32, 33 (2d Cir. 2008) ("[A] deposition need only be signed where a party so requests.").

        Contrary to the defendants' assertion, Rule 32(a) of the Federal Rules does not impose any impediment to the use of Lizarra's sworn deposition testimony.  By its terms, that rule applies to the use of depositions at a "hearing or trial."  Fed. R. Civ. P. 32(a)(1).  The plaintiffs' use of Lizarra's deposition in support of their motion does not constitute use at such a proceeding.  Accordingly, Lizarra's sworn deposition testimony may be considered by the Court.  See Diamonds Plus, Inc. v. Kolber, 960 F.2d 765, 767-68 (8th Cir. 1992) ("deposition need not be admiss[i]ble at trial in order to be properly considered in opposition to a motion for summary judgment"); Microsoft Corp. v. Very Competitive Computer Prods. Corp., 671 F. Supp. 1250, 1254 n.2 (N.D. Cal. 1987) ("Deposition testimony given on personal knowledge that is presented in lieu of affidavits may be considered by the court as substitute affidavits for purposes of motions that require support by affidavits, despite their inadmissibility under Fed. R. Civ. P. 32.").

        Through their deposition testimony, Lizarra and Figueroa present markedly different views of the facts.  At her deposition, Lizarra testified that she was attempting to cross Bell Boulevard in Queens, at its intersection with 36th Avenue, on the date of the accident.  (Pls.' Opp. Mem., Ex. 1 at 15).  Lizarra waited for the red light to change, after which she looked both ways and determined that there were no cars.  (Id. at 17-19).  As she proceeded into the intersection looking straight ahead, she was struck by a vehicle that she had not previously seen and was thrown to the ground.  (Id. at 20-23).  It is undisputed that defendant Lisa Figueroa ("Figueroa") was the driver of that vehicle.

        At her own deposition, Figueroa testified that she had stopped at the traffic light at the intersection.  When the light turned green, she proceeded to make a left turn after a car in front of her made a left turn.  As she executed the turn, she struck Lizarra "close to the corner," having first seen her approximately "two seconds before."  (ECF No. 34 (Decl. of Victor A. Vincenzi, Esq., dated April 19, 2013 ("Vincenzi Decl.")), Ex. A at 15-20).  According to Figueroa, when she saw Lizarra, Lizarra's "head was down or she was texting or doing something on her phone."  (Id. at 31).  Lizarra also "had her headphones on."  (Id.).

If Lizarra was paying careful attention to traffic conditions, had a walk signal, and was not distracted by any personal device, as she contends, the jury presumably will find in her favor as to liability.  If, on the other hand, she was not paying attention and darted into the intersection, as Figueroa's testimony suggests, the jury presumably will render a defense verdict.  Since the Court cannot say as a matter of law which scenario is correct, Lizarra's motion for partial summary judgment must be denied.

B.    <u>Serious Injury</u>

Lizarra claims that she is entitled to recover damages for pain and suffering because:  (i) she suffered a serious injury under the 90/180 Day Rule as to both her left knee and right shoulder injuries; (ii) she suffered a permanent injury to her right shoulder; and (iii) she suffered a "significant limitation" with respect to her left knee and right shoulder.  (<u>See</u> Pls.' Opp. Mem. at 18-23).

1.    <u>Left Knee</u>

The defendants contend that Lizarra did not sustain a serious injury within the meaning of the provisions of the No Fault Law upon which Lizarra relies, and that even if she did, it was not the result of the November 10 Accident because she had injured the knee previously in the June 24 Accident.

The defendants have not met their initial burden as to the question of seriousness.  There is no dispute that, after the accident, Lizarra had a tear in her knee, had limited range of motion, and eventually had surgery to repair the problem.  The post-operative report prepared by Dr. Cohen indicates that he found a "large tear of the midportion of the lateral meniscus deep to the lateral femoral condyle with severe synovitis" when he performed his arthroscopy.  (Pls.' Opp. Mem., Ex. 5 at 1).  That injury was repaired by resecting the midportion of the lateral meniscus tear and the "synovitis of the lateral compartment, intercondylar notch, medial compartment, and patellofemoral joint."  (<u>Id.</u>).  This creates an issue of fact for the jury as to whether Lizarra's knee injury was "serious" as defined by the No Fault Law.

As the defendants explain, however, the normal range of motion for a knee is 0 to 180 degrees.  After the June 24 Accident, in August 2011, Dr. Cohen found the range of motion in Lizarra's left knee to be -15 to 80 degrees.  (Vincenzi Decl., Ex. J at 2).  After the November 10 Accident, Dr. Cohen found the range of motion in the same knee to be -3 to 95 degrees.  (<u>Id.</u>, Ex. T at 2).  Since her range of motion improved, the defendants reason that the November 10 Accident could not have caused a serious injury to Lizarra's left knee.  They also note that the operating room records of Mount Vernon

6

Hospital attribute the surgery performed on Lizarra's left knee to the June 24 Accident. (ECF No. 40 ("Defs.' Reply") at 4).

This evidence suffices to meet the defendants' initial burden on the question of causation. The defendants' range-of-motion argument assumes, however, that Lizarra's range of motion remained constant from August until November 2011. Suffice it to say, this is speculation on the defendants' part. Indeed, as the defendants themselves note, Lizarra did not visit Dr. Cohen between August 2011 and November 2011. She also apparently did not visit Dr. Dina Nelson, the physician who referred her to Dr. Cohen, between September 7, 2011, and the November 10 Accident. This gap in treatment permits the inference that Lizarra considered the knee impairment resulting from the June 24 Accident to have diminished after September 7, 2011.

In an affirmation submitted in opposition to the defendants' motion, Dr. Cohen, who treated Lizarra after both accidents, states that he conducted surgery because the November 10 Accident had exacerbated her left knee injury. (Pls.' Opp. Mem., Ex. 3 at 5). He notes in that regard that he did not recommend that Lizarra undergo an arthroscopy of her left knee until after the November 10 Accident. (Id. at 4). Although the defendants note that Lizarra did not visit Dr. Cohen between August 26, 2011, and January 11, 2012, the assumption that he might have recommended surgery had she done so is just that – merely an assumption. The jury could equally plausibly conclude that there was no need for surgical intervention prior to the November 10 Accident.

Finally, with respect to the left knee injury, the defendants rely on a "No Fault Insurance Information" form that is part of the Mount Vernon Hospital file. That form lists the date of the accident as July 24, 2011. (Defs.' Reply at 4, Ex. A). The form does not, however, identify the source of this information. The Court consequently cannot assume that it constitutes either a causation opinion by Dr. Cohen or another medical provider or an admission by one of the plaintiffs. Indeed, there is no indication that the unnamed person who filled out the Mount Vernon Hospital form was even aware of the November 10 Accident.

Accordingly, because there is sufficient evidence to submit the question of causation to the jury, to the extent that the defendants seek summary judgment on the theory that Lizarra has failed to adduce credible evidence that she suffered a serious injury to her left knee as a result of the November 10 Accident, their motion must be denied.

7

2.    Right Shoulder

The defendants correctly observe that Lizarra did not complain about any injury to her right shoulder immediately after the November 10 Accident.  Additionally, although she was hospitalized for several days after the accident, the New York Hospital records reflect no complaints of shoulder pain.  (Vincenzi Decl., Ex. O).  When Lizarra was seen approximately one week later at SA Medical in the Bronx, Dr. Sonia Armengol similarly did not note any shoulder problems.  Quite to the contrary, Dr. Armengol noted:

> Examination of the right and left shoulder joints did not reveal anterior shoulder pain or point tenderness at the acromiocalvicular area.  Motor strength is 5/5 overall.  No muscle atrophy or swelling noted.  Range of motion is full.

(Id., Ex. P).

The first reference to right shoulder pain appears in Dr. Cohen's report of his examination of Lizarra on January 11, 2012.  With respect to Lizarra's right shoulder, Dr. Cohen found that her forward flexion was limited to 80 degrees (normal is 180), her abduction was limited to 80 degrees (normal is 180), and her strength was "4/5" (normal is 5/5).  He also noted a positive impingement test.[1]  Dr. Cohen concluded that Lizarra had traumatic synovitis of her right shoulder.  (Id., Ex. T).[2]

In his affirmation, Dr. Cohen repeats these findings, opining that the shoulder injury was "directly related to the motor vehicle accident on November 10, 2011."  (Pls.' Opp. Mem., Ex. 3 at 4).  Apart from this statement, Dr. Cohen provides no basis for his conclusion.  Dr. Cohen also fails to address Dr. Armengol's wholly contrary findings one week after the November 10 Accident.

---

[1]    There are several different versions of an impingement test.  "All the impingement tests involve moving the shoulder passively . . . , thus narrowing the subacromial space.  The examiner tests to see if pain appears with these maneuvers and disappears when the examiner removes the downward acromial push."  Allen E. Fongemie, Daniel D. Buss, & Sharon J. Rolnick, Management of Shoulder Impingement Syndrome and Rotator Cuff Tears, 57 Am. Fam. Physician 667 (1998), available at http://www.aafp.org/afp/1998/0215/p667.html.

[2]    In his affirmation submitted in opposition to the defendants' motion, Dr. Cohen says that, on January 11, Lizarra demonstrated 85 degrees forward flexion and 85 degrees abduction in her right shoulder.  (Pls.' Opp. Mem., Ex. 3 at 2).  He does not explain this minor discrepancy, which I assume is a typographical error.

8

Lizarra states in opposition to the defendants' motion that it is "not unheard of, especially when masked by pain in the left knee, for a torn lab[ru]m or rotator cuff to manifest in markedly notic[e]able pain only after some time." (Pls.' Opp. Mem. at 17). This assertion, however, is not supported by any admissible evidence. The medical opinions of Lizarra's counsel obviously are no substitute for such evidence.

Lizarra's counsel also suggests that Lizarra told SA Medical about her "right shoulder complaints." (Id.). Her actual testimony was somewhat more equivocal:

Q.      The first time you had any complaints about
        your right shoulder was to Dr. Cohen when you
        first saw him after the November 10th accident,
        correct?

A.      Yes.

Q.      So you never had any complaints to Dr.
        Armengol?

A.      I think I told her, too.

Q.      Do you know or you just think?

A.      I remember that I told her when I told her about
        my left elbow because it was hurting, but I don't
        remember if it was her or him, but I know he
        gave me the referral.

Q.      Dr. Cohen sent you for the MRI?

A.      Yes.

(Pls.' Opp. Mem., Ex. 1 at 53-54) (emphasis added). In any event, even if the Court were to assume that Lizarra complained of right shoulder pain when she saw Dr. Armengol on November 17, 2011, the results of Dr. Armengol's physical examination did not result in any objective findings consistent with her complaint. In these circumstances, without any explanation as to how he reached his conclusion, Dr. Cohen's boilerplate statement that the right shoulder injury was "directly related" to the November 10 Accident is insufficient to sustain Lizarra's evidentiary burden. See Toure v. Avis Rent A Car Sys., 98 N.Y.2d 345, 350-51 (2002).

9

III.    Conclusion

        For the foregoing reasons, the plaintiffs' motion for partial summary judgment as to liability (ECF No. 30) is denied, and the defendants' motion for summary judgment (ECF No. 11) is granted in part and denied in part.  The Clerk of the Court is therefore requested to close both motions.

        SO ORDERED.

Dated:      New York, New York
            March 21, 2014

                                        _____
                                              FRANK MAAS
                                        United States Magistrate Judge

10